UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| In re Megan Marie Teter, Debtor, | ) | CASE NO.  1:21-cv-00334 |
| | ) | |
| MEGAN MARIE TETER, | ) | JUDGE BRIDGET M. BRENNAN |
| | ) | |
| Appellant, | ) | Appeal from No. 19-11224 |
| | ) | U.S. Bankruptcy Court |
| v. | ) | Northern District of Ohio, Eastern Div. |
| | ) | Hon. Arthur I. Harris, presiding |
| UNITED STATES TRUSTEE, | ) | |
| | ) | |
| Appellee. | ) | **MEMORANDUM OF** |
| | ) | **OPINION AND ORDER** |
| | ) | |

The Equal Access to Justice Act, 28 U.S.C. § 2412 ("EAJA") permits a prevailing party in a civil action either brought by or brought against the United States (or agency or official thereof) to file a motion for costs and attorneys' fees under specified circumstances.  Debtor-Appellant is a chapter 7 bankruptcy debtor.  The U.S. Trustee filed – and later withdrew upon receiving new information and before any court ruling – a motion to dismiss the bankruptcy case pursuant to 11 U.S.C. § 707(b).  Debtor-Appellant then filed a motion for attorneys' fees under the EAJA.

The Bankruptcy Court granted the Debtor-Appellant a discharge order pursuant to 11 U.S.C. § 727.  But the Bankruptcy Court denied the EAJA fee motion on legal grounds, noting the dearth of case law on the specific issues involved:

> Unfortunately, despite the passage of forty years, there appear to be no published cases from the Sixth Circuit or other courts of appeals that have analyzed whether bankruptcy cases or disputes within bankruptcy cases other than adversary proceedings fall within the scope of the term 'civil action' under the EAJA, let alone do so under the Supreme Court's framework for delineating the scope of waivers of sovereign immunity.

*In re Teter*, No. 19-11224, 2021 WL 371750, at *7 (Bankr. N.D. Ohio Jan. 25, 2021).

1

And, if a reviewing court were to find that the debtor is in fact a 'prevailing party' in a 'civil action' for purposes of the EAJA, this Court would certainly benefit from any guidance (1) delineating the applicable 'civil action,' and (2) explaining what is necessary to be a 'prevailing party' in the context of bankruptcy cases or contested matters.

*Id.* at \*22.

Debtor-Appellant filed an appeal from the denial of her EAJA fee motion to this Court, and both sides seek similar clarification. This Court AFFIRMS the decision below and answers the questions of law raised by the parties.

## Issues on Appeal

1.    Does the EAJA apply to this chapter 7 bankruptcy case with a § 707(b) motion to dismiss filed by the U.S. Trustee?

      a.    Was this a 'civil action brought by or against the United States' or its officers acting in their official capacity?

      b.    Does the attorneys' fees recovery clause in § 707(b)(5) preclude the debtor's reliance upon the more general EAJA?

2.    Was the debtor a prevailing party for purposes of the EAJA?

## Jurisdiction & Standard of Review

This Court has jurisdiction over appeals from final orders of the Bankruptcy Court in core proceedings.  28 U.S.C. §§ 157(b)(1) and 158(a)(1); *In re H.J. Scheirich Co*., 982 F.2d 945, 949 (6th Cir. 1993).

Under 28 U.S.C. § 157(b)(1), bankruptcy judges may hear and determine core proceedings arising under the bankruptcy code and may enter orders and judgments in those proceedings.  Core proceedings are defined in a non-exclusive list at section 157(b)(2).  The significance of whether a proceeding is core or non-core is that the bankruptcy judge may hear non-core proceedings related to bankruptcy cases but cannot enter judgments and orders without consent of all parties to the proceeding.  *See* § 157(c).

*In re G.A.D., Inc.*, 340 F.3d 331, 336 (6th Cir. 2003) (citations and quotations omitted).

The matter under review was a core proceeding for one or more of the following reasons. *See generally Sanders Confectionery Prod., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 483 (6th Cir. 1992) (noting that a court "looks at both the form and the substance of the proceeding in making its determination" of core or non-core). First, the matter below concerned the administration of the estate. 28 U.S.C.A. § 157(b)(2)(A). The § 707(b) motion to dismiss related to whether the Debtor accurately described property of the estate, income, and financial obligations. Second, the matter affected the liquidation of the assets of the estate. *Id.* § 157(b)(2)(O). If the § 707(b) motion was granted, then the bankruptcy case would cease to exist, property would return to the debtor, and no discharge of debts against that property would be discharged. Third, the EAJA fee motion matter arose from and is based upon a § 707(b) motion to dismiss that was filed and withdrawn. The contested matter raised by the § 707(b) motion was a core proceeding. *See* 28 U.S.C.A. § 157(b)(2)(A, I, J, O). Other courts have held that a fee motion related to and arising from a core proceeding is itself considered a core proceeding. *See generally In re Mendez*, No. 7-07-11092 SA, 2008 WL 5157922, at *5 n.1 (Bankr. D. N.M. Sept. 26, 2008) ("A request for fees arising out of a core proceeding is also a core proceeding."); *In re Chambers*, 140 B.R. 233, 238 (N.D. Ill. 1992).

A district court reviewing a bankruptcy court's decision in a core proceeding functions as an appellate court, applying the standards of review normally applied by federal appellate courts. *H.J. Scheirich*, 982 F.2d at 949; *In re Dow Corning Corp.*, 255 B.R. 445, 463 (E.D. Mich. 2000), *aff'd and remanded*, 280 F.3d 648 (6th Cir. 2002).

"The district court reviews the bankruptcy court's legal conclusions *de novo*." *In re Batie*, 995 F.2d 85, 88 (6th Cir. 1993); *see also In re Dudley*, 614 B.R. 277, 280 (S.D. Ohio 2020) ("Questions of statutory construction are reviewed de novo."). This Court "may affirm for any

reason presented in the record, even if the reason was not raised below." *Loftis v. United Parcel Serv., Inc*., 342 F.3d 509, 514 (6th Cir. 2003); *see also Stein v. Regions Morgan Keegan Select High Income Fund, Inc*., 821 F.3d 780, 786 (6th Cir. 2016)*; U.S. Postal Serv. v. Nat'l Ass'n of Letter Carrier, AFL–CIO,* 330 F.3d 747, 750 (6th Cir. 2003). It may be appropriate to consider a new issue on appeal when the issue is one of law, and further development of the record is unnecessary. *See generally Lockhart v. Napolitano,* 573 F.3d 251, 261 (6th Cir. 2009) (citing cases).

## Facts

Debtor-Appellant Megan M. Teter ("Debtor") filed a voluntary chapter 7 bankruptcy petition on March 7, 2019. In the schedules filed with her petition, Debtor listed student loans among her debts. Debtor claimed that her debts were primarily business debts and filled out a statement of exemption from presumption of abuse under 11 U.S.C. § 707(b)(2). (Doc. No. 1.)

The U.S. Trustee must review all materials filed by chapter 7 debtors who are individuals and file with the court a statement as to whether a debtor's case would be presumed to be an abuse. *See* 11 U.S.C. § 704(b)(1). The U.S. Trustee must then, within thirty days, either file a motion to dismiss or convert or file a statement setting forth the reasons the U.S. Trustee does not consider such a motion to be appropriate. *See* 11 U.S.C. § 704(b)(2). The U.S. Trustee performs these duties even for cases in which debtors assert that their debts are not primarily consumer debts.

On April 25, 2019, the U.S. Trustee timely filed a statement of presumed abuse. (Doc. Nos. 12 - 14.) On May 28, 2019, the U.S. Trustee timely filed a motion to dismiss Debtor's case for abuse under § 707(b) of the Bankruptcy Code. (Doc. No. 15.) In the § 707(b) motion, the U.S. Trustee argued that most of Debtor's total debt, including debt from student loans, was "incurred

4

primarily for personal, family, or household purposes."  (Doc. No. 15.)  *See* 11 U.S.C. § 101(8).
The U.S. Trustee also claimed that, based on the U.S Trustee's own calculations, there was a
presumption of abuse under § 707(b)(2).  (*Id.*)  The U.S. Trustee argued that if the contested
expenses were adjusted, then Debtor's net monthly income was sufficient to repay her creditors,
justifying a dismissal under § 707(b)(2).  (*Id.*)  The U.S. Trustee also argued, in the alternative,
that the totality of Debtor's circumstances necessitated a dismissal under § 707(b)(3).  (*Id.*)

On June 5, 2019, Debtor filed an amended petition and schedules in which she claimed her
debts were neither primarily consumer debts nor primarily business debts.  (Doc. No. 18.)  On
the same day, Debtor also responded to the U.S. Trustee's motion to dismiss.  (Doc. No. 19.)
The debtor argued that, under the profit motive test, her student loan debt was not "consumer
debt" and, taking into account all of her debt, she was not a debtor "whose debts are primarily
consumer debts" within the meaning of §§ 101(8) and 707(b) of the Bankruptcy Code.  Debtor
also claimed that she provided all information necessary to confirm the expenses contested in the
U.S. Trustee's motion to dismiss.  (*Id.*)

The Bankruptcy Court held an initial hearing on June 18, 2019, and scheduled an
evidentiary hearing for November 14, 2019.  (Doc. No. 23.)

On October 14, 2019, Debtor moved for summary judgment on the U.S. Trustee's motion to
dismiss. (Doc. No. 29.)  Debtor argued that her student loan debts were not consumer debts, and
so she was not a debtor "whose debts are primarily consumer debts" under § 707(b).  According
to the debtor, she incurred student loan debt "in the furtherance of her undergraduate education,"
and "[h]er purpose in undertaking those obligations was to pay for an education and earn a
degree that would maximize her opportunity for employment in business." (Doc. No. 29 at 3.)

5

The Bankruptcy Court denied the summary judgment motion on December 11, 2019 – leaving the issues open until after an evidentiary hearing.  (Doc. Nos. 35 & 36.)  On December 19, 2019, the Bankruptcy Court denied Debtor's motion for reconsideration and set a new evidentiary hearing date of April 23, 2020.  (Doc. Nos. 41 & 42.)  On the same day, the chapter 7 trustee reported that "there is no property available for distribution from the estate over and above that exempted by law."  (Doc. No. 40.)  On January 15, 2020, the Bankruptcy Court issued a second amended scheduling order moving the evidentiary hearing date to May 11, 2020.  (Doc. No. 45.)

On March 2, 2020, Debtor again moved for summary judgment.  She argued that, even using all the U.S. Trustee's other figures for calculating the means test, there would be no presumption of abuse if the Bankruptcy Court were to find that the "imputed income" reported on Debtor's payment advice for health insurance for her domestic partner was not "income received" under 11 U.S.C. § 101(10A).  (Doc. No. 48.)

On March 24, 2020, the U.S. Trustee withdrew the § 707(b) motion to dismiss after becoming aware of facts and circumstances related to Debtor's medical condition.  (Doc. No. 49.)   Although the U.S. Trustee's notice of withdrawal provided no further details, Debtor's March 2, 2020, motion for summary judgment revealed that she was currently facing the challenge of a high-risk pregnancy and other serious health issues.  (Doc. No. 48 at 3.)

On April 23, 2020, Debtor moved for attorneys' fees under the EAJA, 28 U.S.C. § 2412, claiming that she was a "prevailing party" and that the U.S Trustee's motion to dismiss was not substantially justified.  (Doc. No. 50.)

On May 20, 2020, Debtor received an order of discharge.  (Doc. No. 59.)

Briefing and hearings on the EAJA fee motion ensued over the following months. (Doc. Nos. 56 - 58, 60, 63 - 81.) On January 25, 2021, the Bankruptcy Court entered an order and opinion denying the Debtor's motion for fees. (Doc. Nos. 82 - 85.) The Debtor timely appealed to this Court. (Doc. Nos. 86 - 88.)

### Parties' Arguments on Appeal

While the Court has reviewed all of the arguments, below is a summary of the major points raised on appeal.

Debtor contends that the EAJA applies and entitles her to an award of attorneys' fees because, *inter alia*: A motion to dismiss under § 707(b) of the Bankruptcy Code is a contested matter and also a 'civil action' under the EAJA. (Doc. No. 7, Appellant Br. PageID# 167 - 68, 170, 176, 180, 187 - 88, 198 - 99; Doc. No. 11, Reply PageID# 291 - 99.) Bankruptcy cases themselves are civil actions. (Doc. No. 7, Appellant Br. PageID# 192 - 97.) The term "civil action" under the EAJA has a broad scope. (*Id.* PageID# 176-77, 178, 185 - 202.) Federal Rule of Bankruptcy Procedure 9002(1) defines a 'civil action' to include, *inter alia,* proceedings to determine any contested matter. (*Id.* PageID# 179 - 81, 188.) Some litigation that qualifies as a 'civil action' is not only commenced by a complaint but also by other types of initiating documents such as a motion. (*Id.* PageID# 167, 180 - 81.) The history and purpose of the EAJA is to promote equity in litigation between a citizen without resources and the U.S. government. (*Id.* PageID# 168, 173 - 75.) The Bankruptcy Court's statutory construction improperly searched for an ambiguity and narrowed the construction of the EAJA. (*Id.* PageID# 176.) The Bankruptcy Court misapplied case law and other federal statutes. (*Id.* PageID# 182 - 84, 199 - 202.) Debtor should be deemed a prevailing party under the EAJA. The purposes of a § 707(b) motion is to preclude the debtor from receiving a discharge. Here the U.S. Trustee

7

withdrew its § 707(b) motion, and Debtor got the discharge order that was the object of her chapter 7 case.  (*Id.* PageID# 175 - 076, 178, 183 - 85; Doc. No. 11, Reply PageID# 288 - 90, 294 - 97, 301 - 03.)  The plain language and purpose of the EAJA allow for the conclusion that sovereign immunity was waived.  (Doc. No. 7, Appellant Br. PageID#  203 - 06; Doc. No. 11, Reply PageID# 298, 304.)

The U.S. Trustee contends that the EAJA does not apply and that sovereign immunity was not waived for the circumstances of this case because, *inter alia*:  waivers of sovereign immunity are strictly construed and ambiguities are resolved in the government's favor.  (Doc. No. 9, Appellee Br. PageID# 242, 244 - 47.)  The terms 'civil action' does not include an 'umbrella' bankruptcy case, which is not a two-sided lawsuit but rather a centralized proceeding to administer the debtor's property.  (*Id.* PageID# 242, 247 - 249.)  A bankruptcy case is not brought against the United States.  (*Id.* PageID# 255.)  Contested matters such as motions under § 707(b) of the Bankruptcy Code are not civil actions under the EAJA.  (*Id.* PageID# 249 - 259.)  Federal Rule of Bankruptcy Procedure 9002(1) does not define or illuminate the meaning of civil action under the EAJA. (*Id.* PageID# 243, 259 - 261.)  Debtor is not a prevailing party for purposes of the EAJA.  (*Id.* PageID# 243, 264 - 268.)  Congress did not intend to waive sovereign immunity for motions under § 707(b) of the Bankruptcy Code, as evidenced by the waiver provision in § 106(a)(1) and the attorney fee award provision in § 707(b)(5).  (*Id.* PageID# 251; *see also id.* PageID# 238.)[1]

---

[1] The parties disagree in their briefs over Debtor's compliance with required forms and disclosures related to means-testing and computations related to the statutory presumption of abuse.  The Court does not discuss those factual disputes because the decision below and this opinion both turn on dispositive issues of law.

# **Discussion**

## I. **Sovereign Immunity**

Because this appeal requires the interpretation of federal statutes and involves a request for monies from the federal treasury, the Court begins by recounting interpretative canons we are bound to observe.

"The EAJA renders the United States liable for attorney's fees for which it would not otherwise be liable, and thus amounts to a partial waiver of sovereign immunity.  Any such waiver must be strictly construed in favor of the United States."  *Ardestani v. INS*, 502 U.S. 129, 137 (1991).  "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text, and will not be implied."  *Lane v. Pena*, 518 U.S. 187, 192 (1996) (citations omitted); *see also United States v. Nordic Vill. Inc*., 503 U.S. 30, 33 - 34 (1992).

> Legislative history cannot supply a waiver that is not clearly evident from the language of the statute. Any ambiguities in the statutory language are to be construed in favor of immunity, so that the Government's consent to be sued is never enlarged beyond what a fair reading of the text requires. ….
>
> The question that confronts us here is not whether Congress has consented to be sued …. Rather, the question at issue concerns the ***scope*** of that waiver. For the same reason that we refuse to enforce a waiver that is not unambiguously expressed in the statute, we also construe any ambiguities in the scope of a waiver in favor of the sovereign.
>
> … What we thus require is that the scope of Congress' waiver be clearly discernable from the statutory text in light of traditional interpretive tools. If it is not, then we take the interpretation most favorable to the Government.

*F.A.A. v. Cooper*, 566 U.S. 284, 290–91 (2012) (emphasis in original; citations omitted).

While Debtor urges that this Court reify the legislative history, purpose, or perceived 'spirit' of the EAJA, we must resist those endeavors if they would contravene unambiguous statutory text.

> When we ... are called upon to review and interpret Congress's legislation, '[i]t is elementary that the meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain, and if the law is within the constitutional authority of the lawmaking body which passed it, the sole function of the courts is to enforce it according to its terms.'

*Thompson v. N. Am. Stainless, LP*, 567 F.3d 804, 807 (6th Cir. 2009) (*en banc*) (quoting *Caminetti v. United States*, 242 U.S. 470 (1917)), *rev'd on other grounds*, 562 U.S. 170 (2011). "If the words are plain, they give meaning to the act, and it is neither the duty nor the privilege of the courts to enter speculative fields in search of a different meaning." *Caminetti*, 242 U.S. at 490. The "function of the courts - at least where the disposition required by the text is not absurd - is to enforce it according to its terms." *Lamie v. United States Tr.*, 540 U.S. 526, 534 (2004). *See also Robinson v. Shell Oil Co*., 519 U.S. 337, 340 (1997) ("[The court's] inquiry must cease if the statutory language is unambiguous and the statutory scheme is coherent and consistent.") (internal citation and quotation marks omitted); *Rubin v. United States*, 449 U.S. 424, 430 (1981) ("When we find the terms of a statute unambiguous, judicial inquiry is complete, except in rare and exceptional circumstances.").

With these precepts in mind, the Court turns first to matters of statutory construction.

## II.  Bankruptcy Litigation and the EAJA

The Bankruptcy Court aptly observed that while one "cannot deny the clarity of the waiver of sovereign immunity as to lawsuits that are obviously 'civil actions,' the debtor's motion in this bankruptcy case fairly presents a question as to the *scope* of that waiver." *Teter*, No. 19-11224, 2021 WL 371750, at *6 (citation omitted; emphasis in original).

"The Equal Access to Justice Act (EAJA) directs a court to award 'fees and other expenses' to private parties who prevail in *litigation against the United States* if, among other conditions, the position of the United States was not 'substantially justified.'" *Commissioner, I.N.S. v. Jean*,

10

496 U.S. 154, 155 (1990) (emphasis added).  "The EAJA, enacted in 1980, provides for an award of attorney fees to a party *prevailing against the United States* in a civil action when the position taken by the Government is not substantially justified and no special circumstances exist warranting a denial of fees."  *Bryant v. Comm'r of Soc. Sec.*, 578 F.3d 443, 445 (6th Cir. 2009) (emphasis added).

The emphasized phrases above draw attention to a recurring theme in the analysis below. Only a 'civil action' brought by, or one brought against, the U.S. government is a viable candidate in which to award fees under the EAJA.  While the matter below was not a civil action, it also was not one brought by, or one brought against, the United States.  That is why under these facts and circumstances the Bankruptcy Court could not award Debtor the fees sought under the EAJA.  Moreover, the Bankruptcy Code contains its own specific section delineating when attorney fees may be awarded following an unsuccessful § 707(b) motion.  *See* 11 U.S.C. § 707(b)(5).  The Code shows that no such award is permitted if the § 707(b) movant was the United States Trustee.

### A.    Bankruptcy Courts May Hear and Rule on an EAJA Fee Motion.

Although this Court ultimately concludes that the EAJA fee motion below was foreclosed by statute and properly denied, we begin by affirming the Bankruptcy Court's jurisdiction to hear such a motion.

"Congress has [ ] authorized the appointment of bankruptcy and magistrate judges, who do not enjoy the protections of Article III, to assist Article III courts in their work."  *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 668 (2015); *see also* 28 U.S.C. § 151.

In 28 U.S.C. § 2412(a)(1), "the plain and unambiguous statutory language gives 'any court,' including the bankruptcy court, the power to make a fee award under the EAJA."  *O'Connor v.*

11

*U.S. Dep't of Energy*, 942 F.2d 771, 774 (10th Cir. 1991).  Most courts reach this legal

conclusion explicitly or implicitly, which this Court likewise adopts.[2]

Although a bankruptcy court may have jurisdiction to hear a motion for fees brought under

the EAJA, caution is prudent because much of the litigation that occurs in bankruptcy courts

often will not fall within the EAJA's bounds, as discussed below.

> **B.    Attorneys' Fees Under 28 U.S.C. §§ 2412(b) and/or (d) May Be Awarded Only
> in a Civil Action Brought By the United States or in a Civil Action Brought
> Against the United States.**

Debtor's fee motion was filed pursuant to the following two sections of the EAJA, which

contain similar language:

> (b) Unless expressly prohibited by statute, a court may award reasonable fees and
> expenses of attorneys, in addition to the costs which may be awarded pursuant to
> subsection (a), to the prevailing party in ***any civil action brought by or against the
> United States*** or any agency or any official of the United States acting in his or her
> official capacity in any court having jurisdiction of such action. The United States shall
> be liable for such fees and expenses to the same extent that any other party would be
> liable under the common law or under the terms of any statute which specifically
> provides for such an award.
>
> * * *

---

[2] Most courts expressly hold (or presume without expounding) that a bankruptcy court has
jurisdiction to hear a motion for fees under the EAJA.  *E.g., In re Terrill*, 2006 WL 2385236
(Bankr. N.D. Tex. July 27, 2006); *In re Transcon Lines*, 178 B.R. 228, 232–33 (Bankr. C.D. Cal.
1995)*; In re Shafer*, 146 B.R. 477, 481 (D. Kan. 1992), *modified* 148 B.R. 617 (D. Kan. 1992);
*In re Tom Carter Enterprises, Inc.*, 159 B.R. 557, 561 (Bankr. C.D. Cal. 1993); *In re Esmond*,
752 F.2d 1106 (5th Cir. 1985); *In re Newlin*, 29 B.R. 781 (E.D. Pa. 1983); *In re Hagan*, 44 B.R.
59 (Bankr. D. R.I. 1984); *cf. In re Yochum*, 89 F.3d 661, 667–69 (9th Cir. 1996) ("Because
bankruptcy courts are units of the district court, they are by analogy 'courts of the United States'
… and therefore possess the power to award attorneys' fees").   In listing these decisions for the
proposition that a bankruptcy court *may* hear an EAJA motion, this Court does *not* endorse or
adopt any of the merits analysis regarding the applicability (or not) of the EAJA to the
bankruptcy-related litigation at issue in these cases.

(d)(1)(A)  Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in *any civil action* (other than cases sounding in tort), including proceedings for judicial review of agency action, *brought by or against the United States* in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412 (emphasis added).

### 1.    The Matter Below Was Not a 'Civil Action.'

The Bankruptcy Court below explored whether a chapter 7 case and/or a contested matter constitutes 'a civil action.'  *See In re Teter*, No. 19-11224, 2021 WL 371750, at *7 and * 22. This Court understands why the Bankruptcy Court found the existing body of case law wanting.[3]

-------------------

[3] *See Teter*, 2021 WL 371750 at *14 ("Although the debtor cites to case law that simply assumes the scope of the EAJA extends to bankruptcy cases or contested matters within a bankruptcy case, none of these case analyzed whether bankruptcy cases or contested matters fall within the scope of the term 'civil action' under the EAJA. … Nor has the Court been able to uncover any case law directly on point."); *cf. In re S. Indus. Banking Corp.*, 189 B.R. 697, 702 (E.D. Tenn. 1992) (reasoning that "'case' is a term of art in bankruptcy practice.  A case in bankruptcy is the proceeding involving the liquidation or reorganization of a debtor or the adjustment of the debtor's debts. … The case is to be distinguished from the adversary proceeding, Bankr. R. 7001, and from the contested matter, Bankr. R. 9014, both of which arise in the case under the Bankruptcy Code."); *see also In re Garnett*, 303 B.R. 274, 277 (E.D.N.Y. 2003).

It is the difference in meaning of the word "case" as applied in the more general Federal Rules of Civil Procedure and the Federal Rules of Appellate Procedure on the one hand, and in the more specialized Federal Rules of Bankruptcy Procedure on the other, which gives rise to at least part of the problem.  A non-bankruptcy civil "case" is commenced by a complaint and usually ends, if pursued, in a judgment. Fed.R.Civ.P. 3, 54.  A bankruptcy "case" commences with the filing of a petition - 11 U.S.C. §§ 301, 302(a), 303(b), Fed.R.Bankr.P. 1002(a), 1003(a), 1004, 1005 - and may include a number of adversary proceedings (commenced by complaint under Fed.R.Bankr.P. 7003) and "contested matters" (begun by motion under Rule 9014).

*Matter of Berge*, 37 B.R. 705, 706 (Bankr. W.D. Wis. 1983).

Whether a bankruptcy case or a contested matter is a 'civil action' turns out to be fairly esoteric.[4]  There are a litany of distinctions between a prototypical *civil action* (*i.e.*, a lawsuit initiated by complaint, comprised of distinct causes of action, directed at particular adverse parties over whom the forum has personal jurisdiction, seeking specified forms of relief from those parties) *versus* a *bankruptcy case* (which is initiated with an *ex parte* petition predicated on *in rem* jurisdiction over property of the estate and functioning as an order for relief – rather than a list of allegations and demands – resulting in an immediate automatic stay on outside adverse actions against a debtor occurring in other jurisdictions involving third parties not summoned to appear in the bankruptcy court) *versus* a *contested matter* (which is initiated, *inter alia*, by motion or objection to a claim filed in a bankruptcy case by any party with an interest in the debtor's property or in the outcome of a liquidation or reorganization, which is then resolved

---

[4] To the extent the 'civil action' label does little more than to distinguish a legal proceeding from a *criminal* legal proceeding, then bankruptcy cases, adversary proceedings, and contested matters all fall within the civil rubric.  *Cf. Sec. & Exch. Comm'n v. Manor*, No. CV 20-597 (SRC), 2020 WL 3446306, at *1 (D.N.J. June 24, 2020) (discussing a civil action brought by the S.E.C. and a federal criminal action both arising from the same scheme); *Harrison v. Coker*, No. CV 08-4307, 2013 WL 12084734, at *3 (E.D. Pa. Mar. 21, 2013), *aff'd*, 587 F. App'x 736 (3d Cir. 2014) (criticizing a party's position for failure to account for "the difference between criminal and civil actions or briefing regarding the preclusive effects of bankruptcy or state criminal proceedings on federal civil actions").

In some circumstances, 'civil action' is used to connote the distinction between two distinct litigation proceedings.  *Cf. United States ex rel. Yelverton v. Fed. Ins. Co.*, 831 F.3d 585, 588 (D.C. Cir. 2016) ("Although the district court's categorization of bankruptcy appeals as civil (rather than criminal) cases implies that bankruptcy appeals may be considered 'civil actions' in some sense, there are important distinctions between the treatment of bankruptcy appeals and that of civil actions filed originally in district court. … Thus, when Yelverton appealed each of these cases from the bankruptcy court to the district court, he filed nothing in the district court. In that light, we find it insufficiently clear that bringing a bankruptcy appeal to the district court constitutes 'filing a new civil action' in the district court within the meaning of the pre-filing injunction.").

with abbreviated, expedited procedures).  *Cf. In re Salem Mortg. Co.*, 783 F.2d 626, 634 n.18 (6th Cir. 1986) ("[E]verything that occurs in a bankruptcy case is a proceeding. Thus, proceeding here is used in its broadest sense, and would encompass what are now called contested matters, adversary proceedings, and plenary actions under current bankruptcy law.") (quoting S. Rep. No. 989, 95th Cong., 2d Sess. 153-54, reprinted in 1978 U.S. Code Cong. & Ad. News 5787, 5939-40).

Whether a chapter 7 case or a contested matter has or does not have enough traits in common with a typical lawsuit framework to earn the moniker 'civil action' is not the final consideration on appeal given what the parties have raised in their briefs.  This Court agrees with the Bankruptcy Court's conclusion that here we do not have a 'civil action' under the EAJA. And this Court goes further.  Because even if it was a 'civil action,' it would still be necessary that the United States or an agency or officer thereof (in an official capacity) either be the party who brought that civil action or be the party against whom that action was brought.

Debtor stresses that the Federal Rules of Bankruptcy Procedure treats a contested matter and a civil action as essentially the same.

> "Action" or "civil action" means an adversary proceeding or, when appropriate, a contested petition, or proceedings to vacate an order for relief or to determine any other contested matter.

Fed. R. Bankr. P. 9002(1).  Her argument is understandable but insufficient for a few reasons.

First, whether or not the contested matter for the U.S. Trustee's § 707(b) motion to dismiss and/or the Debtor's chapter 7 case are treated as civil actions, that does not inform whether or not those civil actions were brought by or brought against the U.S. government.

15

Second, a bankruptcy definitional rule, adopted by the U.S. Supreme Court, is not an indicator of the meaning of a non-bankruptcy federal statute passed by Congress.  *See* 28 U.S.C. §§ 2071, 2075 (prescribing the authority of the judiciary to adopt rules of bankruptcy procedure).

Third, FRBP 9002(1) treats all adversary proceedings as 'civil actions'; however, a contested matter is only treated as a civil action "when appropriate."  Congress hedged on the latter – likely because it was impossible to predict the innumerable taxonomy of contested matters that might (and do) arise in bankruptcy.  *See Bullard v. Blue Hills Bank*, 575 U.S. 496, 505 (2015) (noting that "the list of contested matters is 'endless' and covers all sorts of minor disagreements").  In any event, for reasons discussed throughout this opinion, this Court concludes that it is not appropriate to treat the contested matter here (*i.e.*, the § 707(b) motion filed and voluntarily withdrawn by the U.S. Trustee) as a civil action for purposes of the EAJA.  *See* 11 U.S.C. 707(b)(4, 5) (discussed *infra*.).

### 2. An EAJA Movant Must Have Prevailed in a Civil Action That Was Brought By or Against the U.S. Government.

Only when the civil action in question was brought by or was brought against the United States will such action be one in which an EAJA fee motion may be granted.  The EAJA's text reinforces this reading.  *See* 28 U.S.C.A. § 2412(d)(2)(E) (treating "civil action brought by or against the United States" as the operative term and expressly including certain contractual appeals within the scope of that defined phrase).  As another court observed, "Congress drafted 28 U.S.C. § 2412(b) to limit liability payable thereunder in a civil action brought 'by or against the United States or any agency or any official of the United States acting in his or her official capacity....'"  *In re Sann*, 546 B.R. 850, 858 (Bankr. D. Mont. 2016).

Thus, a critical inquiry for an EAJA fee motion is whether it is filed in a civil action brought by the United States or in a civil action brought against the United States.  For these purposes, 'United States' includes federal agencies and federal officers acting in an official capacity.  *See* 28 U.S.C. § 2412, subsections (a)(1) and (b).

In this appeal, the parties discuss two proceedings:  the Debtor's chapter 7 case and the U.S. Trustee's § 707(b) motion.  Neither is a permissible locus in which to award fees pursuant to the EAJA, as explained below.

### C.  A Voluntary Chapter 7 Bankruptcy Case Is Neither Brought By Nor Brought Against the United States.

"Unlike a typical lawsuit, where one party brings an action against another, a bankruptcy proceeding provides a forum for multiple parties—debtors, creditors, bidders, etc.—to sort out how to allocate, among other things, a debtor's assets."  *United States v. Schafer and Weiner, PLLC*, No. 21-1203, slip op. at 6 n.1 (6th Cir. Aug. 8, 2022) (quoting *Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 158 (2d Cir. 2017)).  "Critical features of every bankruptcy proceeding are the exercise of exclusive jurisdiction over all of the debtor's property, the equitable distribution of that property among the debtor's creditors, and the ultimate discharge that gives the debtor a 'fresh start' by releasing him, her, or it from further liability for old debts."  *Cent. Virginia Cmty. Coll. v. Katz*, 546 U.S. 356, 363–64 (2006).[5]

---

[5] "Bankruptcy jurisdiction, at its core, is *in rem*. … [T]the jurisdiction of courts adjudicating rights in the bankrupt estate included the power to issue compulsory orders to facilitate the administration and distribution of the *res*."  *Katz*, 546 U.S. at 362 (2006).  "The whole process of proof, allowance, and distribution is, shortly speaking, an adjudication of interests claimed in a *res*."  *Gardner v. New Jersey*, 329 U.S. 565, 574, (1947).

Debtor's voluntary chapter 7 case was not a civil action brought against the United States. Indeed, it was not an action brought *against* anyone.

> A bankruptcy proceeding in itself *is not a proceeding or action against anyone* and the law does not support generalizing all bankruptcy proceedings as arising out of a … dispute … between the debtor and a creditor, even where that dispute is the precipitating factor for the bankruptcy.  The administration of a bankruptcy case is different than 'an action or proceeding' because of the variety of the parties involved, their differing objectives, and the various administrative requirements ….

*In re Hawkeye Ent., LLC*, 625 B.R. 745, 755 (Bankr. C.D. Cal. 2021) (emphasis added); *see also In re Sisk*, 973 F.3d 945, 947 (9th Cir. 2020).  As the Bankruptcy Court here observed: "Bankruptcy cases do not have plaintiffs or defendants. … The commencement of a voluntary case … constitutes an order for relief … 11 U.S.C. § 301.  In contrast, under the Federal Rules of Civil Procedure, an order of relief is by no means automatic.  Rather, 'relief' is something that you ask for in a complaint or other pleading and hope the court will include in its judgment." *Teter*, 2021 WL 371750 at *10.

Because a voluntary chapter 7 case is brought by a debtor, obviously it is not brought by the United States.  Further, a voluntary chapter 7 case is not brought against the United States or against any creditor in particular.  A voluntary chapter 7 case – even if labeled a 'civil action' – therefore does not come within the EAJA's plain language.[6]

---

[6] This holding is limited to voluntary cases for a basic reason:  If the United States in its capacity as a creditor initiated an involuntary bankruptcy case, 11 U.S.C. § 303, it is conceivable that a court might deem such to be an action 'brought by' the United States.  Because that is not the situation here, this Court takes no position on that question.

18

### D.     A § 707(b) Motion to Dismiss or Convert a Chapter 7 Petition Is Not a Civil Action Brought By or Against the United States.

Congress designed the U.S. Trustee to perform administrative functions previously tackled directly by bankruptcy judges.[7]  For a discussion of the historical development of bankruptcy courts and trustees, *see generally In re Castillo*, 297 F.3d 940, 949–51 (9th Cir. 2002), *as amended* (Sept. 6, 2002).  U.S. Trustees "serve as bankruptcy watch-dogs to prevent fraud, dishonesty, and overreaching."  They are "charged with preventing fraud and abuse and with 'fill[ing] the vacuum' caused by possible creditor inactivity."  *Castillo*, 297 F.3d at 950 (quoting H.R.Rep. No. 95–595, at 100 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6061).  "The statutory duties of a bankruptcy trustee operating under the aegis of the U.S. Trustee are enumerated in 11 U.S.C. §§ 704, 1302, 1304."  *Id.*

The strongest formulation of Debtor's argument for purposes of coming within the ambit of the EAJA is as follows:  The U.S. Trustee is an official of the United States acting in an official capacity.  The U.S. Trustee 'brought' a § 707(b) motion, which is a civil matter, *i.e.,* inasmuch as it is not criminal.  Therefore, the § 707(b) motion was brought by the United States.  Even assuming *arguendo* the correctness of this characterization, it is not enough to carry the day.

_____

   [7]  *See* H.R. Rep. No. 95-595 at 4, 88 (1977) *reprinted in* 1978 U.S.C.C.A.N. 5963, 5966 ("The proposed United States Trustees will be the repository of many of the administrative functions now performed by bankruptcy judges, and will serve as bankruptcy watch-dogs to prevent fraud, dishonesty, and overreaching in the bankruptcy arena.... When a liquidation case is commenced under Chapter 7, the United States Trustee will immediately designate a member of the panel to serve as interim trustee in the case.... If a panel member serves in the case, the United States Trustee will be available to give advice in the administration of the case and to supervise the private trustee's performance.").

1.      **A § 707(b) Motion to Dismiss or Convert Is Not Itself a New or Distinct Civil Action; Rather It Is a Phase or Component of the Chapter 7 Case.**

For several reasons, a motion pursuant to § 707(b) is plainly part of the chapter 7 case itself. First, the motion may be brought by the bankruptcy court *sua sponte, i.e.*, the same court that is administering the chapter 7 case.  *See* 11 U.S.C. § 707(b)(1); *cf. id.* § 707(a) (authorizing a bankruptcy court to dismiss a chapter 7 if a debtor fails to do what the Code requires).

Second, once a § 707(b) motion is filed, then notice is given and a hearing is held.  That notice comes in the chapter 7 case.  The hearing is conducted by the same bankruptcy court and in the same chapter 7 case targeted by the motion.

Third, a possible outcome of the motion is for the chapter 7 case to be converted to chapter 11 or 13, *i.e.*, from a liquidation to a reorganization or payment plan.  Such a motion must be part of the bankruptcy case given that the motion might revise the fundamental character and resolution of such bankruptcy case.

Fourth, in civil litigation generally, a motion to dismiss is not ordinarily conceived of, described, or understood to be a distinct proceeding from the action in which it is filed, which is itself targeted for dismissal.  A motion to dismiss is filed in and as part of a civil action precisely to challenge or test whether that same action brought by a plaintiff or petitioner is viable, within the court's jurisdiction, permissible, or legally sufficient to be considered.

Fifth, § 707(b) allows a challenge to or testing of a chapter 7 petition and its supporting documents and schedules to determine whether those are accurate, sufficient, and permissible under the Bankruptcy Code.  The motion does not start its own distinct action; rather, it questions whether the chapter 7 debtor has or has not put forward information that qualifies her for the relief she seeks.

20

Finally, this Court aims to be consistent with the approach taken by the Supreme Court in

*Bullard v. Blue Hills Bank*:

> The present dispute is about how to define the immediately appealable "proceeding" in the context of the consideration of Chapter 13 plans. Bullard argues for a plan-by-plan approach. Each time the bankruptcy court reviews a proposed plan, he says, it conducts a separate proceeding. On this view, an order denying confirmation and an order granting confirmation both terminate that proceeding, and both are therefore final and appealable.
>
> In the Bank's view Bullard is slicing the case too thin. The relevant "proceeding," it argues, is the entire process of considering plans, which terminates only when a plan is confirmed or - if the debtor fails to offer any confirmable plan - when the case is dismissed. An order denying confirmation is not final, so long as it leaves the debtor free to propose another plan.
>
> We agree with the Bank: The relevant proceeding is the process of attempting to arrive at an approved plan that would allow the bankruptcy to move forward.

*Bullard*, 575 U.S. at 502 (2015).  Note that multiple creditors – along with the U.S. Trustee – could file § 707(b) motions in one chapter 7 case.  *See* 11 U.S.C. § 707(b)(1).  So these motions are akin to the chapter 13 plans addressed in *Bullard*:  *i.e.,* a bankruptcy court might sift through several, with each filed by a different party-in-interest.  *Bullard* teaches that each contested hearing on each individual motion is not its own separate civil action.  *Cf. id.*

In short, motions to dismiss generally, and a § 707(b) motion in particular, are part of the action initiated originally by the complainant/petitioner or, here, by the voluntary bankruptcy debtor's petition.  The filing of a subsequent motion in that case does not create or commence a distinct civil action; rather it requires a decision by the court administering the chapter 7 case – a decision taken in and as part of the chapter 7 case itself.  *Cf. In re Brown*, 248 F.3d 484, 486 (6th Cir. 2001) ("Because bankruptcy courts operate as adjuncts to district courts, we view all proceedings in this action, whether in the Bankruptcy Court or the District Court, as one proceeding in bankruptcy.") (citations and quotation omitted).

2.     **Debtor Admits that Her Chapter 7 Case Is the 'Action' in Which She Claims to Have 'Prevailed.'**

In portions of her briefing, Debtor acknowledges that the civil action in which she claims to have 'prevailed' is the chapter 7 case.  Debtor contends that she "prevailed against the substantially unjustified position of the [U.S. Trustee] to receive the Chapter 7 Discharge for which she qualified.  She prevailed in receiving the Order and Final Judgment of Discharge…." (Doc. No. 11, Reply PageID# 280.)  Debtor received her discharge in and as a result of her chapter 7 case.  (*See* Doc. No. 7, Appellant Br. PageID# 184 – 85; Doc. No. 11, Reply PageID# 295, 302, 303.)

As previously discussed, a voluntary chapter 7 case does not come within the plain language of the EAJA.  The chapter 7 case was not an action brought by the United States, and it was not an action against the United States.

At most, in one of the phases or components of that bankruptcy case, Debtor and a United States official (*i.e.*, the U.S. Trustee) squared off on a motion to dismiss.  But that motion was never denied or resolved by the Bankruptcy Court in Debtor's favor.  The U.S. Trustee withdrew it before a ruling was made.  Further, the discharge order Debtor received was not a judgment resolving the § 707(b) motion contested matter.  A discharge order is not filed in, nor does it follow invariably from resolution of, a § 707(b) contested motion.  Rather, a discharge comes in and from resolution of the entire chapter 7 case.

3.     **This Court Declines to Follow a Decision Awarding EAJA Fees to a Debtor Who Withstands a § 707(b) Motion.**

Although Debtor did not raise it, *In re Terrill*, No. 05-87180-BJH7, 2006 WL 2385236 (Bankr. N.D. Tex. July 27, 2006) is a short memorandum decision that awarded fees under the

EAJA to a Chapter 7 debtor whose petition survived a U.S. Trustee's § 707(b) motion to dismiss. *Id.* at *1.  This Court declines to follow *Terrill* for three reasons.

First, in *Terrill*, the EAJA motion was decided akin to a default judgment.  The U.S. Trustee filed no objection to the debtor's EAJA fee motion.  *Id.* at *1 ¶ 8.  "The United States Trustee failed to present any evidence to meet its burden of proof that its position with respect to the Motion was 'substantially justified' or that special circumstances make an award unjust in this case."  *Id.* at *2 ¶ 13.  Had the United States briefed or robustly opposed the fee motion in *Terrill*, it is possible there may not have been an award at all.

Second, the written order in *Terrill* does not mention § 707(b)(5) of the Code.  *Terrill* apparently did not consider whether the specific attorneys' fee provision within § 707(b) itself precluded a debtor from turning to the EAJA to recover fees.

Finally, the written order in *Terrill* does not mention or appear to analyze whether a Chapter 7 case or a contested matter on a § 707(b) motion to dismiss is properly characterized as a civil action brought by or against the United States.

**E.  Section 707(b)(5) of the Bankruptcy Code Precludes or Counsels Against an Award Under the AJEA Based on the U.S. Trustee's Withdrawn § 707(b) Motion.**

Even if one doubted this Court's analysis, *supra.,* based on the nature of bankruptcy cases, matters and proceedings, there is another fundamental reason why an EAJA fee motion is not available to the Debtor.

The principal gripe in her EAJA fee motion and now on appeal is that the U.S. Trustee filed a statement of presumed abuse followed by a motion to dismiss the Chapter 7 case – both pursuant to § 707(b) of the Code.  Debtor argued that these § 707(b) filings were ill-advised and

obstructionist – tantamount to *de facto* motions to extend time. Even assuming *arguendo* that such characterizations were fair (and they do not seem to be), Debtor faces a roadblock.

Section 707(b) of the Code contains *its own* provision devoted specifically to awarding costs and attorneys' fees to debtors who beat back a § 707(b) motion to dismiss.

> Except as provided in subparagraph (B) and subject to paragraph (6), the court, on its own initiative or on the motion of a party in interest, in accordance with the procedures described in rule 9011 of the Federal Rules of Bankruptcy Procedure, may award a debtor all reasonable costs (including reasonable attorneys' fees) in contesting a motion filed by a party in interest *(other than a* trustee or *United States trustee* (or bankruptcy administrator, if any)) under this subsection if--
>
> (i) the court does not grant the motion; and
>
> (ii) the court finds that--
>
> (I) the position of the party that filed the motion violated rule 9011 of the Federal Rules of Bankruptcy Procedure; or
>
> (II) the attorney (if any) who filed the motion did not comply with the requirements of clauses (i) and (ii) of paragraph (4)(C), and the motion was made solely for the purpose of coercing a debtor into waiving a right guaranteed to the debtor under this title.

11 U.S.C.A. § 707(b)(5)(A) (emphasis added). This provision makes plain that a motion for attorneys' fees based on an unsuccessful § 707(b) motion is not available if the § 707(b) movant was the U.S. Trustee.

Debtor ignores this clause in her appeal briefs. The U.S. Trustee mentions this clause, but does not make it a centerpiece of argument. (*See* Doc. No. 9, Appellee Br. PageID# 238, 251.) [8] This Court concludes that § 707(b)(5) is significant for several reasons.

---

[8] On May 19, 2020, the Bankruptcy Court held an initial hearing on the EAJA fee motion. At the hearing, the Court outlined its initial analysis of the debtor's motion. The Court noted that the EAJA might not apply because § 707(b) of the Bankruptcy Code contains its own fee shifting provisions in § 707(b)(4) and (b)(5), which appear to preclude a fee award if a § 707(b) motion was filed by a United States trustee. *See Teter*, No. 19-11224, 2021 WL 371750, at *3.

First, the EAJA does not authorize a fee award where another statute rules out a fee award. Returning to the two clauses of the EAJA on which Debtor relies, the emphasized language below makes this point plain:

> (b) ***Unless expressly prohibited by statute***, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. ***The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award***.
>
> * * *
>
> (d)(1)(A)  ***Except as otherwise specifically provided by statute***, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (emphasis added).  As previously noted, § 707(b)(5) of the Bankruptcy Code specifically rules out a fee award if the party who brought an unsuccessful § 707(b) motion was the U.S. Trustee.  The EAJA clauses in subsection (b) and (d) decline to permit a fee award where another statute provides that such fees not be awarded.  That is what § 707(b)(5) does.  And because the latter section of the Code is specifically applicable to § 707(b) motions, it controls the question of whether a fee award is permissible.

Second, § 707(b)(5) conveys Congressional intent.  Sovereign immunity is not waived for a motion seeking attorneys' fees based on a § 707(b) motion that was filed by the U.S. Trustee. Had a private citizen creditor filed a specious § 707(b) motion, for example, then a debtor who successfully defends such a motion may have a chance to be awarded fees under § 707(b)(5) … but ***not*** if the movant was the U.S. Trustee.  *See id.*  Moreover, the Bankruptcy Code expressly

abrogates sovereign immunity with respect to multiple Code provisions.  Section 707 is not one of those.  *See* 11 U.S.C. § 106(a)(1).

Third, Debtor's position chafes with some foundational precepts of bankruptcy.  A bankruptcy court whose aid is sought is not bound to assume the correctness or legitimacy of the assertions made by the person who seeks judicial aid.  The process of hearing challenges to that person's claims or requests for relief "is, indeed, of basic importance in the administration of a bankruptcy estate whether the objective be liquidation or reorganization."  *Gardner*, 329 U.S. at 573.  "It is traditional bankruptcy law that he who invokes the aid of the bankruptcy court … must abide the consequences of that procedure."  *Id.*  One such consequence is that attorney fee motions can be available to a debtor who repels certain § 707(b) motions, but not for such motions filed by a U.S. Trustee.  11 U.S.C. § 707(b)(5).

Read in tandem, the opening qualifier phrases in subsections (b) and (d) of the EAJA, along with § 707(b)(5) of the Bankruptcy Code, render it impossible as a matter of law to grant the fee motion filed by the Debtor.

### F.  Because the Plain Language of the EAJA and Bankruptcy Code Resolve this Appeal, the Court Need Not Weigh Into Legislative History and Policy Objectives.

Debtor argues, correctly, that the general aim of the EAJA was to prevent the cost and complexity of litigation versus the federal government from deterring a citizen litigant who lacks resources.  (Doc. No. 7, Appellant Br. PageID# 168, 173 - 75, 185 - 90.)  *See Sullivan v. Hudson*, 490 U.S. 877, 883 - 84 (1989).  However, for the reasons previously discussed, this Court finds the statutory text of the EAJA and Bankruptcy Code clear and unambiguous.  Thus, there is no occasion here to review legislative history, statutory purpose, or public policy considerations.

Debtor's overall position is reminiscent of an approach rejected in *Astrue v. Ratliff,* 560 U.S. 586 (2010), where the Supreme Court rejected "an effort to avoid EAJA's plain meaning" by cobbling together other federal statutory clauses and functional descriptions of past government practice. *See id.* at 593 - 98. *Ardestani*, where legislative purpose and public policy rationales were sensible but insufficient to overcome one statutory textual barrier, also is instructive:

> Finally, we consider [the] argument that a functional interpretation of the EAJA is necessary in order to further the legislative goals underlying the statute. The clearly stated objective of the EAJA is to eliminate financial disincentives for those who would defend against unjustified governmental action and thereby to deter the unreasonable exercise of Government authority.

> We have no doubt that the broad purposes of the EAJA would be served by making the statute applicable to deportation proceedings. We are mindful that the complexity of immigration procedures, and the enormity of the interests at stake, make legal representation in deportation proceedings especially important. We acknowledge that [petitioner] has been forced to shoulder the financial and emotional burdens of a deportation hearing in which the position of the INS was determined not to be substantially justified. ***But we cannot extend the EAJA*** to administrative deportation proceedings ***when the plain language of the statute, coupled with the strict construction of waivers of sovereign immunity, constrain us to do otherwise***.

*Ardestani*, 502 U.S. at 137 (emphasis added).

The Court has not ignored Debtor's fairness and policy arguments. All of this is to say that these arguments are for Congress to consider – not this Court.

## III. Debtor Was Not a Prevailing Party.

In addition to this Court's statutory interpretation of (i) a civil action by or against the United States under the EAJA and (ii) the non-waiver of sovereign immunity under § 707(b)(5), there is another distinct reason why this Court affirms the decision below. Debtor was not a 'prevailing party' under the EAJA.

Both Debtor and the U.S. Trustee ask this Court to determine whether Debtor was a prevailing party. "In designating those parties eligible for an award of litigation costs, Congress

employed the term 'prevailing party,' a legal term of art." *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.,* 532 U.S. 598, 603 (2001).  Although Debtor received a discharge order, this Court cannot conclude that she is a prevailing party for purposes of an award under the EAJA.

### A.   Debtor Did Not Prevail on the Issues She Presented for Summary Adjudication.

Debtor filed two motions for summary judgment on matters related to her chapter 7 petition, the presumption of abuse, and eligibility for a discharge.  In those, Debtor staked out her positions regarding the proper characterization of student loan debt and its resulting effect on Debtor chapter 7 case and entitlement to a discharge.  (*See* Doc. Nos. 29 & 48.)  The Bankruptcy Court did not resolve those in favor of the Debtor.  (*See* Doc. Nos. 35 - 36, 41 - 42.)  The Bankruptcy Court did not agree with Debtor's positions, and there is no order or opinion siding with the Debtor on her legal theories.  That detracts from her suggestion that she was a prevailing party.

### B.   Surviving a Withdrawn Motion to Dismiss Under § 707(b) of the Bankruptcy Code Is Not Sufficient to Render a Litigant a Prevailing Party.

Although the U.S. Trustee filed a § 707(b) motion to dismiss, the Bankruptcy Court never ruled on that motion.  The motion was voluntarily withdrawn by the U.S. Trustee once the Debtor disclosed and documented her high-risk pregnancy.  *See* 11 U.S.C. § 707(b)(2)(B)(i) (providing that a presumption of abuse may be rebutted by a serious medical condition).  This Court draws guidance from the Supreme Court:

> Numerous federal statutes allow courts to award attorney's fees and costs to the "prevailing party."  The question presented here is whether this term includes a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has

nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct.  We hold that it does not.

*Buckhannon*, 532 U.S. at 600.

The Debtor did not prevail on the issues raised in the U.S. Trustee's § 707(b) motion.  The Bankruptcy Court neither resolved the motion nor sided with Debtor's views on the disputes raised.  There was no order denying the § 707(b) motion, so there was no victor here.

Debtor therefore looks instead to her receipt of a discharge order pursuant to § 727 of the Bankruptcy Code at the conclusion of her chapter 7 case.   It is true that the discharge order is akin to a final order or judgment.  But basic problems persist.  As explained previously, 'prevailing' in a chapter 7 case is not prevailing in an action brought by or against the United States.

Moreover, the apparent pivotal development that prompted the withdrawal of the § 707(b) motion was *not* some legal or factual submission by Debtor that bested the U.S. Trustee.  Instead, it was the revelation of a medical issue, *i.e.*, Debtor's high-risk pregnancy.  Under § 707(b)(2)(B), this new circumstance might overcome the statutory presumption of abuse.  Here, the U.S. Trustee did the commendable thing in voluntarily withdrawing the motion to dismiss in light of this news.  This Court declines to hold that a newly discovered serious medical condition of a debtor renders said debtor a prevailing party eligible for fees under the EAJA, even if the revelation does indeed rebut or overcome the presumption of abuse under § 707.

### C.    Receiving a Chapter 7 Discharge Order Is Not Sufficient to Render a Litigant a Prevailing Party.

A related problem with Debtor's argument is that it would work a potential sea change in the number of instances where the federal government may be liable for fees.  Any time a debtor receives a discharge order, the debtor could move for fees if at some point the U.S. Trustee

resisted the discharge or pushed back against the accuracy or completeness of schedules, assertions or submissions made by a debtor.

Such an approach could open Pandora's box given that a "United States trustee may raise and may appear and be heard on any issue in any case or proceeding under" the Bankruptcy Code.  11 U.S.C. § 307.  In any event, Congress left a textual clue to resolve the question:   The Bankruptcy Code expressly abrogates sovereign immunity with respect to multiple Code provisions.  11 U.S.C. § 106(a)(1).  Section 727 – the Code provision that covers discharge orders – is *not* one of the instances where sovereign immunity was waived.  *See id.* This Court will not infer Congressional intent to allow every debtor with a discharge order to sue the U.S. Trustee for an attorneys' fee award based on the latter's performance of watch-dog duties required by the Bankruptcy Code during the administration of the bankruptcy case.[9]

> **D.      The Court Does Not Opine on Substantial Justification or Special Circumstances.**

Even if a litigant prevails in an action covered by the EAJA, that statute includes exceptions if "the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust."  28 U.S.C. § 2412(d)(1)(A).

_____

[9] A bankruptcy case "is a collective proceeding that involves a multiplicity of parties with both cooperative and competing interests rife with strategic behavior that may include pretextual or meritless assertion of claims and objections. … Given the number of parties, the immense range of activity regulated by the bankruptcy court, and the ease of access to the bankruptcy court, strategic litigation by bullies, hold-outs, and squeaky wheels are endemic concerns in bankruptcy."  Daniel J. Bussel, *Fee-Shifting in Bankruptcy*, 95 Am. Bankr. L.J. 613, 632 (2021). Allowing EAJA fee awards merely for receiving a discharge seems inconsistent with the admonition that "[a] request for attorney's fees should not result in a second major litigation," *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983), or "spawn a second litigation of significant dimension," *Texas State Teachers Assn. v. Garland Ind. School Dist.*, 489 U.S. 782, 791 (1989).

Though the record sheds light on these subjects, this Court declines to reach those questions. The Bankruptcy Court did not make findings in this regard.  Because this Court holds that the EAJA fee motion is not available as a matter of law, the Court need not delve into these fact-dependent exceptions within the EAJA.

Finally, although the EAJA does not apply in the present circumstances, this Court's holding should not be misconstrued to mean that the EAJA will never come into play in bankruptcy litigation.  *E.g., In re Wood Locker, Inc*., 868 F.2d 139, 142 (5th Cir. 1989) ("Adversary proceedings have been correctly described as 'full blown federal lawsuits within the larger bankruptcy case,' and are thereby distinguishable from other disputes in bankruptcy cases which are denominated 'contested matters'….").

## Conclusion

For the reasons discussed above, this Court AFFIRMS the denial of the Debtor's motion for an award of fees and costs under the EAJA.


**IT IS SO ORDERED.**


Date: August 15, 2022                             _____
                                                  BRIDGET M. BRENNAN
                                                  UNITED STATES DISTRICT JUDGE

31